SCHAFF v. ULMER.  (No. 2463.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 24, 1921.)

Carriers ⬌185(3)—Conversion by a terminal carrier of a carload of lumber not shown.

Evidence *held* insufficient to show that a terminal carrier had converted a carload of lumber by an unauthorized delivery without production of a bill of lading.

Appeal from District Court, Camp County; Hugh Carney, Judge.

Action by O. C. Ulmer against C. E. Schaff, receiver of the Texas & Pacific Railway Company, for conversion of a carload of lumber. Judgment for the plaintiff, and the defendant appeals. Reversed, and judgment rendered for the defendant.

McMahan, Jones & Jones, of Greenville, for appellant.

C. G. Engledow, of Pittsburg, and T. C. Hutchings, of Mt. Pleasant, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the value of a carload of lumber. The judgment is based upon the ground that the terminal carrier had converted the lumber by an unauthorized delivery without the production of the bill of lading. The evidence shows that in May, 1920, the Ferd Brenner Lumber Company, located at Alexandria, La., placed an order for a carload of oak lumber with O. C. Ulmer, of Mt. Pleasant, Tex. The car was loaded and shipped by W. P. Gaddis as consignor, from Cason, Tex., on July 18. It was sent under a shipper's order bill of lading, with instructions to notify the Ferd Brenner Lumber Company. On June 23, and before the car arrived at its destination, the lumber company received from Ulmer a letter stating that he had just loaded the car of lumber at Cason, and giving a description of its contents and the amount. He also stated that the bill of lading had not then arrived, and he was merely checking the contents of the car. He continued:

"Will send you bill of lading to-morrow or day after, and will load another car of same material this week. * * * I expect my mill has drawn direct on you from Cason for 80% which is all right to me."

Other correspondence followed between them regarding the payment before inspection, which is not necessary here to mention. The lumber was shipped by the appellant over its line to Shreveport, La., and there delivered to the Texas & Pacific Railway Company, which carried it to Alexandria. Upon its arrival at Alexandria the car of lumber was switched onto a spur track leading into the yard of the Ferd Brenner Lumber Company. The evidence shows that this track was owned by the Texas & Pacific Railway Company, and was used for storing cars, and also for delivering freight to the Ferd Brenner Lumber Company. It appears that the car was switched into the yard of the lumber company about the 1st day of July, 1920. The Texas & Pacific agent at Alexandria notified by letter and by telephone the Ferd Brenner Lumber Company of the arrival of the car, and that it was subject to a shipper's order bill of lading. The day the car was placed upon the switch track in the yard of the lumber company, without the knowledge or consent of the railway company, the employees of the lumber company began to unload it. The lumber was on a flat car with strips nailed across the top. These were removed, and about 500 feet of the lumber taken off. Upon discovering that the lumber was not of the kind and quality contracted for, the employees of the lumber company immediately replaced it, and notice was given to Ulmer that the lumber was refused. About a week or 10 days later Ulmer and Gaddis both visited Alexandria for the purpose of adjusting the difference with the lumber company about the grade. When they arrived they found the car intact, standing on the switch in the yard of the lumber company. Failing to reach an agreement with the Ferd Brenner Lumber Company, Gaddis and Ulmer returned without giving any notice to the railway company as to what disposition should be made of the lumber. The car remained upon the switch track in the yard of the Ferd Brenner Lumber Company until about the middle of August, when it was

removed and stored by the Texas & Pacific Railway Company for the purpose of releasing the equipment. In September it was sold to satisfy freight and demurrage charges. It is agreed in the statement of facts that the proceedings with reference to the sale were regular. Practically the only question presented in this appeal is, Had the Texas & Pacific Railway Company been guilty of conversion by an unauthorized delivery of the lumber to the Ferd Brenner Lumber Company? It is conceded that by the terms of the bill of lading under which this shipment was made the appellant is liable if the Texas & Pacific Railway Company was guilty of a conversion. That issue was submitted to the jury, and the finding was against the railway company. The contention here is that the finding is not supported by the evidence, and we are of the opinion that the assignment should be sustained. The only evidence of a delivery to the lumber company is the bare fact that the car was placed upon the switch track within the lumber yard at the point where cars were generally unloaded. The notice which was subsequently given to the lumber company was that the car was subject to a shipper's order bill of lading. The partial unloading was wholly unauthorized by the railway company, and without its knowledge. Hence the temporary possession taken by the lumber company was unlawful. That the actual possession was restored to the railway company, and afterward tendered to the appellee, upon the payment of the accrued charges, is undisputed. Ulmer testified:

"I knew I could have gotten my car of lumber by presenting the bill of lading and paying the demurrage. I got notice of conditions there about July 6th. I knew that demurrage had already accumulated when I got the notice."

While Ulmer is the party who contracted to sell the lumber, Gaddis appears to have been the real owner, as well as the consignor and the consignee named in the bill of lading. Ulmer's connection with the transaction was unknown to both the carriers. Gaddis, who was appellee's witness, testified without contradiction that, on the day he and Ulmer started to Alexandria to adjust the dispute with the lumber company about the quality of the lumber, he sold the car of lumber to Ulmer for the sum of $727.81. That was after the act relied on to constitute a conversion had taken place, and after notice that the car had been inspected and rejected by the lumber company. This indicates that Ulmer acquired his title after the alleged conversion. The logical inference is that he did not decide to hold the appellant liable for a conversion until after he failed to get a satisfactory settlement with the lumber company. The general superintendent of the lumber company testified that, while Ulmer

and Gaddis were at Alexandria discussing the differences about the quality of the lumber, Ulmer finally agreed to go to the bank, get the bill of lading, and have it at the lumber yard the next morning; that they were to go through the car, inspect and measure the lumber, and settle according to the grade. Ulmer admitted that he had agreed to get the bill of lading, but later decided that he did not want to accept the offer of the lumber company for that kind of a settlement.

We conclude that there was no conversion shown, and that the appellee was not entitled to recover. In this instance the terminal carrier did not unconditionally tender the car to the lumber company, nor did it at any time part with its right to hold it subject to the terms of the bill of lading. The judgment will therefore be reversed, and judgment here rendered for the appellant.